## AFFIDAVIT

I, Grace B. Leone, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent (SA) with the Federal Bureau of Investigation ("FBI") and have been since October 2023. I began as a Special Agent in October of 2023 and am currently assigned to the FBI's Kansas City Field Office on the Domestic Terrorism/Weapons of Mass Destruction (WMD) Squad, which is a component of the Joint Terrorism Task Force. On this squad, I serve as an Assistant WMD Coordinator. I began working for the FBI in September of 2015, and I supported criminal and national security investigations within a surveillance capacity from 2015 to 2021 in the FBI's Saint Louis Field Office. From 2021-2023, I worked for the FBI in the capacity of a Surveillance Program Specialist, training surveillance assets throughout the United States. Through my experience, education, and training, I have become familiar with the manner in which destructive devices are manufactured and have participated in the investigation of potential violations of the U.S. criminal laws that govern domestic terrorism and the manufacturing of improvised explosive devices.

2. The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses. The information contained in this affidavit is submitted for the sole purpose of demonstrating that probable cause exists for the issuance of a criminal Complaint. Because this affidavit is being submitted for that limited purpose, it does not contain all the information known to me and/or other law enforcement officers involved in this investigation. Rather, it contains only those facts which I believe are necessary to establish the requisite probable cause for the requested Complaint.

3. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 844(i), malicious damage and attempted malicious damage by fire of any

property used in interstate commerce, and 26 U.S.C. §§ 5681(d) and 5871, unlawful possession of an unregistered firearm (specifically a destructive device as defined in 26 U.S.C. § 5845(a)(8) and (f)) have been committed by **Owen McIntire ("McIntire")**.

## PROBABLE CAUSE

### Arson at the KC Tesla Center

4. The Kansas City, Missouri Tesla Center ("KC Tesla Center") is located at 10111 State Line Road, in Kansas City, Missouri, which is within the Western District of Missouri. KC Tesla Center is owned by Tesla, Inc. ("Tesla"). Tesla is headquartered in Austin, Texas, and operates numerous motor vehicle dealerships and service centers nationwide and internationally that provide appointments, repairs, test drives, charging stations, and purchases of Tesla vehicles. The KC Tesla Center is one such dealership/service center. The KC Tesla Center advertises through their website, Tesla.com, for these services and can conduct sales and financial transactions with anyone in the United States. The KC Telsa Center has also performed vehicle services for maintenances and repairs for customers residing in and traveling from states outside of Missouri. This Tesla Center holds vehicle inventory that has been shipped in interstate commerce from Austin, Texas and used in interstate commerce or involved in an activity effecting interstate or foreign commerce.

5. On March 17, 2025, at approximately 11:16 p.m., a Kansas City, Missouri Police Department ("KCMOPD") officer in the vicinity of the KC Tesla Center observed smoke coming from a Cybertruck (Cybertruck One) parked in the KC Tesla Center parking lot. Cybertruck One was identified as a grey Cybertruck. The officer also observed an unbroken suspected incendiary device near the burning Cybertruck One. The officer used his fire extinguisher to put out the fire; however, he was unable to extinguish the fire in Cybertruck One. The officer moved the unbroken

incendiary device away from the burning Cybertruck to preserve its evidentiary value. The officer also removed the towel from the bottle and smelled the overwhelming odor of what the officer identified as gasoline coming from the bottle. The fire spread from Cybertruck One to a second Cybertruck (Cybertruck Two) parked next to Cybertruck One. Cybertruck Two was identified as a grey Cybertruck. The Cybertrucks had the following Vehicle Identification Numbers ("VIN"): VIN-7G2CEHEE4RA054072 and VIN-7G2CEHEE9SA061735. The Kansas City Fire Department responded to the scene to extinguish the fire.

6. KCMOPD recovered the unbroken incendiary device ("Unbroken Incendiary Device"), which was a clear apple cider vinegar bottle with a yellow and red label and is pictured below. The Unbroken Incendiary Device is commonly referred to as a Molotov cocktail.[1] The Unbroken Incendiary Device was located on the pavement next to a burnt rag, which appeared to be white and yellow striped ("Rag"). The Rag was secured as evidence for future DNA comparative analysis. A Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") report of examination stated that the Unbroken Incendiary Device was designed as a weapon and is an improvised incendiary bomb. Incendiary bombs, commonly referred to as firebombs or Molotov cocktails, are destructive devices as that term is defined in 26 U.S.C. §5845(f) and would be regulated in accordance with the Federal firearms laws. Additionally, this device falls within the meaning of an incendiary device found in paragraph (5) of 18 U.S.C. § 232 and is therefore an explosive as that term is defined in 18 U.S.C. § 844(j). As part of my involvement in this

---

[1] Based on my training and experience, a Molotov cocktail is a hand-thrown incendiary weapon consisting of a frangible container filled with flammable substances and equipped with a fuse. These incendiary devices are typically a glass bottle filled with flammable liquids, such as gasoline, sealed with a cloth wick. When used, the wick is lit, and then the device is thrown. The container will shatter on impact, and the flammable substance will then catch fire. The fire typically spreads as the fuel burns.

investigation, I also conferred with SA Derek Garth of the ATF. Special Agent Garth conducted an inquiry of their NFA Branch to see if **McIntire** registered a weapon, to include destructive devices commonly referred to as "Molotov Cocktails," in compliance with the National Firearms Act of 1934 (NFA). According to SA Garth, **Owen McIntire** does not have an NFA weapon registered.

7. Accordingly, the Unbroken Incendiary Device that was recovered was not registered to **McIntire** as would be required for **McIntire** to legally possess it. Below are photographs of the Unbroken Incendiary Device and the Rag.





8. The manager of the KC Tesla Center provided information about Cybertrucks One and Two and noted that they had fire damage. The Cybertrucks had sale prices of $105,485 and $107,485. Additionally, two charging stations were damaged by the fire. According to the manager at the KC Tesla Center, the approximate value of each charging station is $550. I also know that Cybertrucks One and Two were not manufactured in the State of Missouri, but they were transported to the State of Missouri to be sold in interstate commerce.

9. On March 18, 2025, agents with the ATF canvassed the neighboring businesses and residences to locate potential witnesses and video surveillance of the area around the KC Tesla Center.

10. Investigators spoke with an occupant of a residence that was located approximately one block west of the KC Tesla Center, in Leawood, Kansas (Witness 1). Witness 1 provided two separate surveillance videos that captured the street in front of their residence.

11. Witness 1's surveillance footage showed that on March 17, 2025, at approximately 11:00 p.m., a white crossover vehicle arrived and parked outside of Witness 1's residence. The footage, a still picture of which is below, showed the vehicle arrive driving from westbound on

5

103rd Street and turning northbound on Witness 1's street.



12.     After the vehicle parked, an unknown individual was seen exiting the driver's side of the vehicle. The individual then accessed the passenger side of the vehicle. Ultimately, the footage showed the individual walking away from the vehicle southbound toward 103rd Street. The individual was wearing dark flowy clothing and a large, white-colored hat and carrying a light-colored bag. This individual is the individual I believe to be the individual responsible for the fire at the KC Tesla Center and will be often referred to throughout the remainder of this affidavit as "**Target Subject**." As detailed in this affidavit, I believe the **Target Subject** is **Owen McIntire**.



13.     Investigators subsequently checked the KCMOPD License Plate Reader ("LPR")

6

located at 103rd and State Line Road, which is one-half block east of Witness 1's address. The LPR recorded a 2021 white Subaru Crosstrek, VIN: JF2GTHMCXM8263064, Missouri License Plate NC2W1P ("the Subject Vehicle") passing through the intersection at 103rd Street and State Line at 11:00 p.m. on March 17, 2025. The Subject Vehicle is registered to a person known to investigators who is believed to be related to **Owen McIntire** (hereinafter referred to a "Individual #1") at a residence in Parkville, Missouri ("Parkville Residence"). The Subject Vehicle was driving westbound through the intersection and in the direction of Witness 1's residence. Investigators reviewed the LPR footage, a still picture of which is below, and the vehicle captured appears to me, based on my training, experience, and knowledge of the investigation, to be the same make and model as the vehicle captured by Witness 1's surveillance video.



14. An additional search of KCMOPD's LPR system revealed that on March 17, 2025, at 10:44 p.m., the Subject Vehicle was travelling southbound on Southwest Trafficway from 39th Street in Kansas City, Missouri. I know that this location is generally on the way from the Parkville Residence to the KC Tesla Center and Witness 1's residence.

7

15. ATF investigators also obtained surveillance footage from a business ("Business") located near 102nd and State Line Road, which is just south of the KC Tesla Center. This footage, depicted below, showed an individual whom I believe to be **McIntire** wearing dark flowy clothing and a large-brimmed hat, walking northbound on State Line Road and approaching the KC Tesla Center at 11:09 p.m.



16. Investigators also obtained and reviewed surveillance footage from the KC Tesla Center. This footage, as depicted below, showed that on March 17, 2025, at 11:10 p.m., the individual I believe to be **McIntire** approached from the south and entered the premises of the KC Tesla Center, wearing dark flowy clothing and a light-colored brimmed hat and carrying a light-colored bag. Based on the timeline, direction of travel, and clothing worn by the individual it is my belief that the individual is the same individual captured by Witness 1's and the Business's security cameras.



17. KC Tesla Center footage further captured **Target Subject** bending down and grabbing something. **Target Subject** is then seen lighting a device, which subsequently ignites, throwing it at Cybertruck One, then lighting another device, and throwing it at Cybertruck One as well. **Target Subject** then walked away from the trucks and the KC Tesla Center, travelling on foot southbound on State Line Road and then westbound across State Line Road, in the vicinity of a residence on State Line Road, in Leawood, Kansas ("Leawood Residence"). The Subject Vehicle left the vicinity of Witness 1's residence at approximately 11:13 p.m. and was seen turning westbound onto 103rd Street.

18. Investigators also conducted a review of public social media. They located an X (formerly a tweet) on X (formerly Twitter) that was potentially relevant to this investigation. On March 18, 2025, an X user identified hereinafter as Witness 2 posted a video showing who I believe to be **Target Subject** running westbound across the front yard towards the back of the Leawood Residence. This individual was wearing dark flowy clothes and appeared to be carrying a large light-colored item. Witness 2 appeared to be driving southbound on State Line Road and slowed down to take the video of the KC Tesla Center and **Target Subject** running away. The video from the KC Tesla Center also appeared to show a vehicle slow down on State Line Road

9

contemporaneously with **Target Subject** walking westbound across State Line Road.

19. During an interview on March 20, 2025, Witness 2 stated he was traveling southbound on State Line when he noticed the fire at the KC Tesla Center. Witness 2 said that he started filming a video on his phone at 11:11 p.m. Witness 2 stated he slowed down and grabbed his phone and then noticed an individual in a black dress with black clothing underneath. Witness 2 said the individual in black was tall, skinny, lanky and appeared to be a woman because of the long hair. Witness 2 described the hair as long and dark, possibly black, but it was dark out. Witness 2 also described the individual as young. He was given a range of 15-30 and stated younger than 30, closer to 20.

20. Witness 2 stated the individual was carrying something white and rectangular. Witness 2 said that he saw the face well enough to know there was no mask but not well enough to give good descriptors of facial features because it was dark. Witness 2 said he stopped his vehicle and yelled at the unknown individual and that is when the individual picked up the pace and ran to the Kansas side of the street and through the yard.

21. As mentioned, the ATF performed an area canvass the day after the KC Tesla Center fires on March 18, 2025. This canvass occurred before 4:46 p.m. The ATF located and recovered an abandoned light-colored brimmed hat with a black ribbon ("the Hat") in the backyard of the Leawood Residence. As mentioned, the Hat that is pictured below appears to be similar to the Hat that was seen on videos of the **Target Subject** on the surveillance video footage captured outside of Witness 1's residence. The Hat was secured as evidence for future DNA comparative analysis. Below is a photograph of the Hat.



22. Also on March 18, 2025, an individual working at the KC Tesla Center (Witness 3), stated that at 4:46 p.m., Witness 3 observed an individual walking in a similar area in which the **Target Subject** filmed by Witness 2 the previous evening was believed to have fled from the fire. The unknown individual was seen walking from behind the Leawood Residence, where the Hat had been recovered by ATF, and continued walking south on State Line Road. Witness 3 described the unknown individual as male, long hair, lengthy body, and 6'0" or above. A photograph taken by Witness 3 is below:

11

Case 4:25-cr-00139-SRB    Document 1-1    Filed 04/17/25    Page 11 of 20



23. According to GPS, Witness 1's residence is approximately an eight-minute walk, or 0.4 miles from the KC Tesla Center, making this a reasonable location to park and a match to the timeframe of the video footage received from both Witness 1, Witness 2, and the KC Tesla Center cameras.

24. Following the identification of the Subject Vehicle as being the vehicle arriving near to and before the fire at the KC Tesla Center and being the vehicle from in which the **Target Subject** arrived in and generally ran back towards after the fire, investigators learned that the

Subject Vehicle was registered to Individual #1 at the Parkville Residence

25. **McIntire** currently attends an institute of higher learning in Boston, Massachusetts, but was on spring break the week of March 16, 2025, and I believe **McIntire** was in the Kansas City area then based on, among other items, **McIntire's** flight records, a review of **McIntire's** social media, a review of his cellular phone's historical GPS location, and physical surveillance at Kansas City International Airport ("KCI").

26. On March 18, 2025, ATF agents observed the Subject Vehicle located at the Parkville Residence. Physical surveillance observed Individual #1 driving the vehicle on March 19, 2025.

27. **McIntire** had no badge access at his campus in the Boston area from March 16, 2025, to March 22, 2025. **McIntire** had no dining hall access from March 16, 2025, to March 22, 2025. **McIntire's** student credentials were not used between March 15, 2025, at 11:40 p.m. and his subsequent return to campus following a flight as described below on March 23, 2025. **McIntire's** flight on March 23, 2025, was due to arrive in Boston at 2:23 p.m. ET. **McIntire's** credentials were next used at his campus in the Boston area at 3:26 p.m. ET on March 23, 2025, and he made a charge at a dining hall at 6:00 p.m. on March 23, 2025.

28. **McIntire's** student demographic information contains, among other items, the following items of investigative interest:

- Address Permanent: the Parkville Residence;
- Phone Permanent/Cellular1: 816-812-5361 ("the 5361 Number");
- Email Personal: owenjmcintire@icloud.com.

29. Investigators reviewed **McIntire's** public Instagram account on March 19, 2025, and the Instagram account posted an Instagram story that was a video where the person taking the

video was standing on the deck of a residence, and the story was captioned "It's SNOWING." Investigators know that it was snowing in the Kansas City metropolitan area on the evening of March 19, 2025. As part of my involvement in this investigation, I reviewed information available on the National Weather Service website (https://www.weather.gov/wrh/Climate?wfo=eax) and confirmed that in the Kansas City, Missouri area there was light snowfall on March 19, 2025.

30. Investigators also identified and reviewed **McIntire's** public Facebook account. Investigators found a photograph of **McIntire**, where he has long, dark hair, similar to what was described by Witness 2.



31. Investigators learned that **McIntire** was scheduled to arrive in Kansas City, Missouri, at KCI on Republic Flight 5602 on March 16, 2025, that departed Boston Logan International Airport (BOS) at 4:05 p.m. ET. Investigators also learned he was to leave KCI on

14

Delta Flight 572 from KCI to BOS on March 23, 2025, at 6:00 a.m. CT with a connecting flight from Laguardia Airport in New York (LGA).

32. Physical surveillance at KCI of **McIntire** on March 23, 2025, captured the below photograph, depicting that **McIntire's** hair is currently a similar length as seen in the above photograph from Facebook. Physical surveillance also confirmed that **McIntire** had what appeared to be an electronic device, which I believed to be a cell phone, in his possession at the time he was at KCI on March 23, 2025. Based on my training and experience, I know that individuals tend to carry their portable cellular devices on them as they go about their daily activities. As seen at KCI, **McIntire** appeared to be holding a cellular device on his person, intending to travel with that cellular device to his destination. I believe that **McIntire** boarded his scheduled flight, Delta Flight 572 to BOS with a connection at LGA, because I observed **McIntire** talking to an employee at the gate and then he was no longer observed and historical cell phone records indicated that the phone was in the location of KCI on March 23, 2025. Below is a photograph of **McIntire** that was taken at the KCI Airport.



33. Based on social media account information, the 5361 Number is associated with user **Owen McIntire**. Open-source queries revealed this number to be associated to Amazon, Google, Snapchat (display name: Owen, username @owen20247425), Telegram (Display name: Owen McIntire, UID 7434821427), WhatsApp, and X Accounts. Additionally, the 5361 Number is listed as **McIntire's** permanent phone number at his institute of higher learning and associated with his iCloud account.

34. According to service provider T-Mobile, the 5361 Number is registered to an individual known by law enforcement who is believed to be related to **McIntire** ("Individual #2") and at the Parkville Residence. The IMEI on this device is associated with the Apple iCloud account owenjmcintire@icloud.com under the name Owen McIntire.

Cellular Analysis Survey Team Analysis

35. Official review of historical cell site information on phone number 816-812-5361 ("5361 Number") by the FBI Cellular Analysis Survey Team (CAST) shows that the 5361 Number

16


travelled in a southerly direction from the area of the Parkville Residence consistent with movement toward the KC Tesla Center. LPR data places the Subject Vehicle in the immediate vicinity of the KC Tesla Center at 11:00 pm. Historical cell site records are consistent with LPR activity travelling to and from the area of the KC Tesla Center. Historical cell site activity is also consistent with the mobile device returning to the Parkville Residence. This is the time frame in which the arson occurred at KC Tesla Center. This information also coincides with the LPR hits on the Subject Vehicle. Based on my training, experience, and knowledge of this investigation, this information coupled with the other evidence summarized in this affidavit, I believe **McIntire** left the Parkville Residence in the Subject Vehicle. I believe that **McIntire** then drove one block west of the KC Tesla Center, in Leawood, Kansas to park the vehicle. I believe **McIntire** then walked to the KC Tesla Center to commit the arson and then he returned to one block west of the KC Tesla Center, in Leawood, Kansas, entered his vehicle, and returned to the Parkville Residence. Below are screenshots of the official CAST summary cell site connections:







DNA Analysis

36. On March 27, 2025, ATF reported initial results from the DNA samples identified on the Hat and on the Rag which was used as a wick in the Unbroken Incendiary Device. ATF reported there was one DNA profile, which was that of a male, located on both the Rag and the

18

Hat and the DNA profile on the Rag matched the DNA profile on the Hat.

## **CONCLUSION**

37. Based on the facts set forth in this affidavit, I believe there is probable cause to believe that **Owen McIntire** has committed multiple federal offenses. Those offenses include the following violations: violations of 18 U.S.C. § 844(i), malicious damage and attempted malicious damage by fire of any property used in interstate commerce, and 26 U.S.C. §§ 5681(d), 5845(a)(8) and (f), and 5871, unlawful possession of an unregistered firearm (a destructive device). Further Affiant sayeth naught.

_____
Grace Leone
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me via reliable electronic means this 17th day of April 2025. *Sworn to by telephone*
*12:19 PM, Apr 17, 2025*

_____
Honorable Lajuana M. Counts
United States Magistrate Judge
Western District of Missouri



19